UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

SHERRIE HEALY,            Civil No. 08-304 (JRT/FLN)

    Plaintiff/Counterclaim Defendant,

v.            **MEMORANDUM OPINION AND ORDER**

BUHRS AMERICAS, INC.,

    Defendant/Counterclaim Plaintiff.

---

Steve G. Heikens, **HEIKENS LAW PRACTICE**, 10 South Fifth Street, Suite 700, Minneapolis, MN 55402, for plaintiff/counterclaim defendant.

Krista A. P. Hatcher and Richard A. Ross, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, for defendant/counterclaim plaintiff.

On December 13, 2006, just over six months after plaintiff Sherrie Healy began working for defendant Buhrs Americas, Inc. ("BAI"), the company terminated her. Healy brought this action against BAI, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and breach of her employment contract.[1] BAI asserts a single counterclaim, alleging that Healy's retention of separation pay, notwithstanding her rescission of the Separation and Release Agreement, constitutes conversion of $5,061.30. BAI now moves for summary judgment on Healy's claims, and Healy moves for summary judgment on BAI's counterclaim. For the reasons discussed

---

[1] Healy notes that she is voluntarily dismissing Count 2, which alleges intentional misrepresentation. (Mem. in Opp'n to Mot. for Summ. J., Docket No. 42, at 1.)

below, the Court grants in part and denies in part BAI's motion, and denies Healy's motion.

## BACKGROUND

In the spring of 2006, BAI president Kevin Thompson began searching for a new salesperson for BAI's printer equipment sales division. After speaking with Healy on the phone and meeting with her in person, Thompson elected to hire Healy. Healy signed an Employment Agreement with BAI, which became effective June 5, 2006. Healy's responsibilities as a salesperson included developing new sales accounts and managing existing accounts for BAI's envelope-inserting-system equipment. At the time she was hired, Healy was 58 years old.

The Employment Agreement established Healy's pay and benefits, providing that BAI would pay Healy a gross monthly base salary of $5,416.67. (Docket No. 21, Ex. 1, ¶ 4.) The Employment Agreement also provided that "[i]n addition to base salary, Healy will be paid a monthly 'guaranteed commission' in the amount of $2083.33, which is $25,000 on an annualized basis. This guaranteed commission will end on June 5, 2007." (*Id.*, Ex. 1, ¶ 5.) Healy would be eligible to earn commissions over and above $2083.33 if her sales justified the additional commissions. (*Id.*)

Healy's employment agreement also provided that "Buhrs Americas shall continue to employ Healy for an indefinite duration until her employment is terminated in accordance with Paragraph 9 of this Agreement." (*Id.* ¶ 2.) Paragraph 9 of the Employment Agreement stated, "Buhrs Americas and [Healy] acknowledge and agree that [Healy] is an at-will employee of Buhrs Americas, and that Buhrs Americas or

[Healy] may terminate her employment for any reason and no reason, with or without cause." (*Id.* ¶ 9.) Specifically, Paragraph 9 provided that Healy's employment could be terminated:

    (a)   At any time upon mutual written agreement of the parties;

    (b)   Within the first six (6) months of employment, by either [Healy] or Buhrs Americas at any time and for any reason, with or without cause, upon two (2) weeks' written notice to the other;

    (c)   After the first six (6) months of employment, by either Employee or Buhrs Americas at any time and for any reason, with or without cause, upon thirty (30) days written notice to the other;

    (d)   Employee's employment will terminate immediately upon her death.

(*Id.*)

In the event of Healy's termination or resignation, the Employment Agreement required BAI to pay Healy "her base salary through her last day of employment, and any accrued and unused vacation," and to give Healy "such benefits to which she is entitled in accordance with applicable plan documents." (*Id.*) Further, BAI could elect to pay Healy her salary during the notice periods referred to in subsections (b) and (c) of Paragraph 9, in lieu of her continued performance of her duties during the notice period. (*Id.*)

In September 2006, BAI, through Thompson and three BAI board members – Jan Clement, Adrian Van der Klooster, and Ad Linssen – began discussing the need to eliminate one of BAI's sales representatives in an effort to cut fixed costs. After considering two sales representatives, Danny Atkins and Michael Martinis, Thompson decided to terminate Atkins's employment. At the time of his termination, Atkins was 44 years old, and had completed one or two sales in his nine months with BAI.

Thompson stated that he did not consider Healy for termination at that time because she had only been employed by BAI for a short time and appeared to be progressing as a sales representative.

BAI later concluded that one additional sales position would need to be eliminated, and Thompson testified that he considered both Healy and Martinis. In early November 2006, Thompson apprised Healy's sales manager, Gary Harris, that Healy was the sales representative BAI was going to terminate. BAI finalized its decision to fire Healy in December 2006. Unwilling to fire Healy himself, Thompson delegated the termination responsibility to Harris, indicating Healy's age "could be a problem." The parties, however, dispute who made the final decision to terminate Healy. Defendants argue that Thompson was the responsible party, citing his initial indication to BAI board members in October 2006 that Healy should be let go. Plaintiffs provide evidence contradicting this claim, suggesting that the board members in Germany – Clement, Van der Klooster, and Linssen - were responsible for the ultimate decision to terminate Healy's employment, including testimony from Thompson that the board members "communicated" to him that Healy should be let go. (*See* Thompson Dep., Docket No. 43, at 187:17-24.)

Thompson e-mailed Harris a termination letter and Separation Agreement and Release to provide to Healy. Harris originally questioned the decision to terminate Healy and called Clement, but Clement directed Harris to proceed with the termination. On December 13, 2006, Harris met with Healy and told her that BAI was terminating her employment due to financial cutbacks. Healy signed the Separation Agreement and Release, and Harris gave her two checks for amounts allegedly owed under the

Employment Agreement, as well as separation pay.² On December 20, 2006, Healy notified BAI in writing that she was exercising her right to rescind the Separation Agreement and Release, but she did not return any payment that she received at the time of her termination.

On February 1, 2008, Healy filed suit alleging that Healy was terminated because of her age in violation of the ADEA, 29 U.S.C. §§ 621 *et seq.*, and alleging breach of contract premised on BAI's refusal to pay Healy the "guaranteed commissions" through June 5, 2007. BAI brought a counterclaim, alleging that Healy's failure to return separation pay after rescinding the Separation Agreement and Release constituted conversion. BAI now moves for summary judgment on Healy's ADEA and breach-of-contract claims, and Healy moves for summary judgment on BAI's counterclaim for conversion.

**DISCUSSION**

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the

---

² The Separation Agreement and Release provided that Healy would receive separation pay in exchange for a release of claims that Healy might have against BAI, its parent company, or affiliates. (Separation Agreement and Release, Docket No. 28, Ex. E, ¶ 3.)

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. BAI'S MOTION FOR SUMMARY JUDGMENT

### A. Age Discrimination Under the ADEA

The ADEA makes it unlawful for an employer to discriminate against its employees based on age, 29 U.S.C. § 623(a)(1), but the statute applies only to individuals who are at least 40 years old, *id.* § 631(a). To establish an ADEA claim, a plaintiff must demonstrate that her employer intentionally discriminated against her. *Ziegler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 675 (8th Cir. 1998). Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a plaintiff may survive summary judgment by presenting evidence that creates an inference of unlawful discrimination. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007).

In support of her ADEA claim, Healy introduces three general categories of evidence. First, Healy points to several instances in which BAI board members Clement and Van der Klooster asked Thompson about Healy's age. (*See, e.g.*, Thompson Dep., Docket No. 43, at 27:9-24; *id.* at 184:14 - 185:14.) Healy does not directly link those queries, however, to any discriminatory intent or to her adverse employment decision.

Second, Healy introduces evidence that the board members evinced a preference for younger employees. Specifically, Healy notes that Thompson testified that Van der Klooster had directed Thompson to surround himself with people "considerably younger" than Thompson and had advised him to act as the "elder statesman" of those employees.

(*Id.* at 125:8-24.) Thompson also testified that Van der Klooster had a problem with several candidates for an important BAI management position, claiming that Van der Klooster considered the candidates to be "too old" and pressed Thompson to surround himself with "a younger team than [him]." (*Id.* at 126:1-13.) Healy also points to testimony by Clement indicating, in the context of a hypothetical hiring decision, that if Clement were deciding between two equally qualified individuals for a particular position, and one was 62 years old and the other was 32 years old, he would "take [into] . . . account" the candidates' ages in making the hiring decision. (Clement Dep., Docket No. 43, at 160:12 – 161:8.) Finally, Healy notes that Linssen testified that when he directed Thompson to hire a new controller, he told Thompson that he should hire "an angry young man." (Linssen Dep., Docket No., Ex. 43, at 241:2 – 242:23.)

Third, Healy points to testimony that allegedly negates BAI's contention that it had a legitimate, non-discriminatory purpose for terminating Healy rather than Martinis. Healy notes that Thompson himself thought that Healy's termination was unjust because it was based on "gender and age." (Thompson Decl., Docket No. 43, at 94:8-12.) Healy also introduces evidence suggesting that BAI's purported justifications for firing her were illogical or unfair, and those arguments are discussed more fully below in the Court's *McDonnell-Douglas* analysis.

### B. Direct Evidence

Healy contends that if she can establish an ADEA violation through direct evidence, the Court should apply the *Price Waterhouse* mixed-motive analysis, in which "an employer may be held liable for dismissing an employee on the basis of a mixture of

motives, including some legitimate and some illegitimate considerations." *Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 436 (8th Cir. 1998) (quoting *Robinson v. Southeast Pennsylvania Transportation Authority*, 982 F.2d 892, 899 & n.8 (3d Cir. 1993); *cf. Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) (applying the *McDonnell Douglas* burden shifting analysis where the plaintiff "does not contend, and the record does not show, that he has any direct proof that [the employer] terminated him because of his age").

The United States Supreme Court, however, recently held in *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009), that the ADEA does not "authorize[] a mixed-motives age discrimination claim." The Supreme Court noted that a plaintiff's burden of persuasion in establishing employer liability is the same "in alleged mixed-motives cases as in any other ADEA disparate-treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 2351. In short, *Gross* concluded that a mixed-motive analysis does not apply to ADEA claims, and the Court therefore declines to follow earlier, contrary Eighth Circuit precedent. *See, e.g.*, *Griffith v. City of Des Moines*, 387 F.3d 733, 736-737 (8th Cir. 2004); *Deneen*, 132 F.3d at 436.

Accordingly, the Court does not distinguish between direct or circumstantial evidence here and does not consider Healy's claims under a *Price Waterhouse* analysis. *See Gross*, 129 S. Ct. at 2351 & n.4.

### C. *McDonnell Douglas*

Under the burden-shifting framework in *McDonnell Douglas*, an individual alleging age discrimination must first establish a prima facie case of discrimination. *Riley*, 518 F.3d at 1000. If an individual can establish that prima facie case, the burden shifts to the defendant-employer to produce evidence of a legitimate, non-discriminatory reason for the termination. *Id.* at 1000. If the employer comes forth with such evidence, the presumption of discrimination raised by the claimant's prima facie case no longer applies and the plaintiff must show by a preponderance of the evidence that the employer's reasons for termination were a pretext for intentional discrimination. *Id.*

#### 1. Prima Facie Case of Discrimination

Healy must first establish a prima facie case of discrimination by showing that (1) she was 40 years old or older at the time of her termination; (2) she was otherwise qualified for the position when her employment was terminated; (3) she was terminated; and (4) her termination occurred in circumstances giving rise to an inference of unlawful discrimination. *See id.* "A plaintiff may meet the last requirement by presenting . . . 'circumstantial' evidence (such as comments and practices that suggest a preference for younger employees)." *Hanebrink v. Brown Shoe Co.,* 110 F.3d 644, 646 (8th Cir. 1997). BAI concedes that Healy satisfies the first three elements of the analysis. BAI contends, however, that Healy has failed to come forth with evidence that her age was a factor in the termination decision.

The Court disagrees with respect to Healy's required prima facie showing. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex.*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Here, Healy has introduced evidence that BAI board members inquired multiple times about Healy's age after meeting her and that BAI board members indicated a preference for hiring younger personnel. Although BAI disputes the context of those statements and argues that there is no "additional evidence that age was a factor" in the termination, Healy has provided sufficient circumstantial evidence of discriminatory animus to establish a prima facie case of discrimination.

### 2. Legitimate, Non-Discriminatory Intent

Next, the Court turns to BAI's proffered non-discriminatory reason for the termination decision. BAI asserts that Healy was terminated because BAI needed to reduce fixed costs in the fall of 2006. BAI singled Healy out for termination, according to BAI, because she was BAI's most recent hire in the sales department; she had made no sales other than a deal that was actually attributable to her sales manager, Harris; and she did not have imminent prospects for a sale or a sales forecast that was appreciably more realistic or stronger than Martinis's sales forecast.

BAI does not have a high burden to establish legitimate, non-discriminatory reasons for the termination decision; BAI need only "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis removed). Healy counters that BAI has failed to satisfy even this low burden because BAI has not provided "specific dates, numbers, expectations or failures" relating to the nondiscriminatory rationale for termination her. (Pl.'s Mem. in Opp'n to Mot. for Summ.

J., Docket No. 42 at 20.) This claimed inadequacy is irrelevant. Taking BAI's evidence as true, the Court concludes that BAI has sufficiently demonstrated evidence of legitimate, nondiscriminatory reasons for Healy's termination. As a consequence, the burden shifts once again to Healy to demonstrate that BAI's proffered reasons for termination were pretextual.

### 3. Evidence of Discriminatory Intent

Showing pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. "The showing of pretext necessary to survive summary judgment 'requires more than merely discrediting [the employer's] proffered reason for the adverse employment decision. [The plaintiff] must also prove that the proffered reason was a pretext for age discrimination.'" *Kohrt v. MidAm. Energy Co.*, 364 F.3d 894, 898 (8th Cir. 2004) (quoting *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1128 (8th Cir. 1999)). "[T]he ultimate question is whether the plaintiff presents evidence of conduct or statements by persons involved in [the employer's] decision-making process reflective of a discriminatory attitude sufficient to allow a reasonable jury to infer that that attitude was a motivating factor in [the employer's] decision to fire [the plaintiff]." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (internal quotation marks omitted; alterations in the original).

A plaintiff may establish pretext by showing that an employer's explanation is unworthy of credence because it has no basis in fact or by showing directly that the discriminatory reason more likely motivated the employer. *Wallace v. DTG Operations,*

*Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (citing *Burdine*, 450 U.S. at 256). "Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Id.*

Healy attacks BAI's purported rationale by rebutting BAI's underlying factual claims. First, Healy argues that BAI's "most recently hired employee" rationale is baseless because BAI has not offered evidence that it used similar criteria in other termination decisions. Second, Healy questions the validity of BAI's proposed criteria evaluating a salesperson's sales volume. That is, Healy contends that if BAI discounts a sale that was actually made by Harris (but credited to Healy) in calculating Healy's sales total, then neither Healy nor Martinis had a "sale" at the time of Healy's termination. Finally, Healy counters that the justification that Healy had "no imminent prospect of sales" is meritless because there was no evidence that Martinis consummated a sale prior to Healy's termination and there is evidence that Healy had a larger "sales funnel" or sales forecast than Martinis.

BAI responds that Healy has failed to present evidence that the "most recently hired employee" criteria was **not** used in the decision-making process or that a company must use the same selection criteria in all layoff decisions. Second, BAI asserts that Healy's arguments regarding the "no sales" criteria fail because, despite BAI's discounting of the Harris sale in Healy's total sales count, "Healy provides no evidence that younger employees were given 'the benefit of a sale' credited to their territories while she was not." (Def.'s Reply Mem., Docket No. 46, at 13.) Finally, BAI contends that Healy's arguments regarding the "no imminent prospect of sales" criteria is faulty

because BAI has already produced evidence that Martinis did, indeed, consummate a $470,000 sale just days before Healy's termination.[3]

In these circumstances, however, there is a genuine fact dispute regarding whether BAI's proffered rationale for the Healy's employment action was pretext for discriminatory intent. Healy presents evidence that could reflect a discriminatory attitude and from which a reasonable juror could find that the discriminatory attitude was a motivating factor in terminating Healy. Healy first points to deposition testimony that German board members told Thompson to surround himself with younger people, and that he should be an "elder statesman" that leads those employees. Next, Healy produces evidence that Clement testified at his deposition that if he were deciding between two equally qualified individuals with the same experience for a certain position, but who were 32 years old and 62 years old respectively, he would "take into account" their ages. Healy also notes that Van der Klooster, Clement, and Linssen had all given Thompson instructions to "hire younger people." Although the evidence presented here is not particularly compelling and the context of this evidence may indicate somewhat harmless intentions, the Court will not weigh evidence or make credibility determinations at summary judgment.[4]

Further, the Eighth Circuit has made it clear that "[s]ummary judgment should seldom be granted in employment discrimination cases because intent is often the central

---

[3] The Court notes that despite this proffered rationale, Martinis's sale was completed on December 11, 2006, and the date on Healy's termination letter was December 8, 2006.

[4] Notably, a district court in this district has already concluded that facts similar to these, in Thompson's own ADEA claim against BAI, were sufficient to defeat summary judgment. *Thompson v. Buhrs Am., Inc.*, No. 07-2746, 2009 WL 537633, at *8 (D. Minn. Mar. 3, 2009).

issue and claims are often based on inference." *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005). This is a low standard, and summary judgment in employment discrimination cases "should not be granted unless the evidence could not support any reasonable inference of discrimination." *Id.* Under these circumstances, the Court finds that Healy has produced evidence adequate to create a dispute of material fact that the reasons for her termination were pretext for age discrimination. Accordingly, BAI's motion for summary judgment is denied as to Healy's ADEA claims.

### D. Breach of Contract

Healy also alleges breach of her Employment Agreement, and "seeks to receive the signing bonus she was promised that was presented as a guaranteed commission in her contract." (Pl.'s Mem. in Opp'n to Mot. for Summ. J., Docket No. 42, at 24.) Healy contends that notwithstanding her termination in December 2006, she is entitled to the "expressly guaranteed" commission that was to be paid monthly and was to end on June 5, 2007. Specifically, Healy contends that BAI breached its implied duty of good faith under the Employment Agreement to pay her that commission through June 5, 2007.

The law in Minnesota is clear, however, that "Minnesota does not recognize an implied duty of good faith and fair dealing in employment contracts." *Brozo v. Oracle Corp.*, 324 F.3d 661, 668 (8th Cir. 2003); *Kivel v. Wealthspring Mortgage Corp.*, 398 F. Supp. 2d 1049, 1057 (D. Minn. 2005) ("Under Minnesota law all contracts other than sales and employment contracts include 'an implied covenant of good faith and fair dealing . . . .'").

Moreover, the Employment Agreement states that "[i]n addition to base salary, Healy will be paid a monthly 'guaranteed commission' in the amount of $2083.33, which is $25,000 on an annualized basis. This guaranteed commission will end on June 5, 2007." (Docket No. 20, Ex. 1, ¶ 5.) The Court cannot conclude that language indicating the annual cumulative total of those guaranteed commissions obligated BAI to pay monthly commissions through June 5, 2007, even in the event of her termination prior to that date. Indeed, the Employment Agreement explicitly provides that in the event of Healy's termination, BAI would pay "her base salary through her last day of employment, and any accrued and unused vacation." (*Id.* ¶ 9.) The Employment Agreement goes on to state "[Healy] shall not be entitled to any further or other payments or benefits of any kind upon her termination or resignation." (*Id.*) Under those circumstances, Healy was not entitled to guaranteed commissions due after the date of her termination.

Accordingly, under a theory of implied duty of good faith and fair dealing or under the explicit terms of the Employment Agreement, Healy's claim for breach of contract fails as a matter of law and BAI's motion is granted as to that claim.

### III. HEALY'S MOTION FOR SUMMARY JUDGMENT

BAI asserts a single counterclaim, asserting that Healy's retention of separation pay, despite her rescission of the Separation and Release Agreement, constitutes conversion. Healy now moves for summary judgment on that counterclaim.

### A. Background

On December 13, 2006, Harris met with Healy to apprise Healy of BAI's termination decision. At the meeting, Harris provided Healy with a Separation Agreement and Release providing that Healy would receive separation pay in exchange for a release of all claims that Healy might have against BAI. (Docket No. 26, Ex. E., ¶ 3.) After Healy signed the Separation Agreement, Harris gave her two checks, each for $5624.16, totaling $11,248.31. Harris informed Healy that the first check was for amounts BAI owed to Healy under the Employment Agreement, and the second check was consideration in exchange for Healy signing the Separation Agreement and Release. Healy cashed both checks, but on December 20, 2006, Healy exercised her right to rescind the Separation Agreement and Release. Healy did not reimburse BAI for the consideration BAI paid her for signing the September Agreement and Release.

On February 26, 2007, after speaking with Healy about the return of the consideration for signing the Separation Agreement and Release, new BAI president Michael Aumann sent Healy a letter with a spreadsheet indicating how much money Healy owed BAI as a consequence of her rescission of the Separation Agreement and Release. Although Aumann originally calculated the total amount of money owed to BAI as $10,752.98, BAI now contends that the gross outstanding amount of severance pay and benefits paid to Healy is $5,061.30.

### B. Conversion

BAI contends that Healy is liable to BAI under Minnesota conversion law for "rescinding the Separation Agreement and Release but keeping the consideration she was

provided in exchange for signing it." (Def.'s Mem. in Opp'n to Mot. for Summ. J., Docket No. 26 at 7.) Under Minnesota law, "conversion" is "an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession," and "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (internal quotation marks omitted).

According to the Court's calculations and the clear language of the Employment Agreement, Healy would appear to be entitled to: (1) her base salary through the last day of her employment ($2,708.34 salary + $1,041.67 "guaranteed commission," pro-rated + $275 car allowance, pro-rated = $4,025.01); (2) any accrued and unused vacation ($1,250); (3) thirty-days' salary in lieu of Healy's continued performance during the thirty-day notice period ($5,416.68); and (4) benefits to which Healy is entitled in accordance with plan documents.

Based on those preliminary calculations of **gross** amounts owed, Healy would be owed approximately $10,691.69. Under the Employment Agreement, Healy is "not [] entitled to any further or other payment or benefits of any kind upon her termination." In the termination letter, however, BAI also provided that in consideration for Healy signing the Separation Agreement and Release, BAI would pay her (1) an additional month's salary ($5,416.57); (2) guaranteed commissions for the remainder of December and all of January ($3,125.33); car allowance for the remainder of December and all of January ($525); and full premiums for health, dental, and life insurance through January 31, 2007 ($752.95).

According to the Court's calculations, Healy would therefore be entitled to an additional $9,066.90 in gross pay, plus insurance premiums. Thus it would appear that in accordance with the Employment Agreement and in exchange for signing the Separation and Release Agreement, Healy would be owed total gross amounts of $19,758.59. The Court does not find here that Healy is entitled to that amount. Rather, the Court notes these preliminary calculations in light of the parties' arguments.

The parties' briefs confuse gross and net total amounts owed, and fail to adequately offer the Court guidance about what has been paid, what should be paid, and what should be returned. For example, Healy contends that the first check for $5,624.16 is payment for her salary for the first two weeks in December. That is implausible, however, because the check constituted **net pay**. Healy would have only earned half of that amount (in **gross** numbers) at the time of her termination and **still** would not have earned that amount if the check included the pro-rated portion of her guaranteed commissions for the month of December.

At the hearing, the parties were still unable to articulate with any clarity the amounts owed and paid. Given this confusion, the Court is unable to determine as a matter of law that Healy is liable for any unreturned amount as a result of the rescission of the Separation and Release Agreement. Accordingly, the Court denies Healy's motion for summary judgment.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Buhrs Americas, Inc.'s Motion for Summary Judgment [Docket No. 35] is **GRANTED in part** and **DENIED in part** as follows:

    a. The motion is **GRANTED** with respect to Sherrie Healy's breach of contract and intentional misrepresentation claims. Accordingly, Counts 2 and 3 are **DISMISSED with prejudice**.

    b. The motion is **DENIED** in all other respects.

2. Sherrie Healy's Motion for Summary Judgment on Buhrs Americas, Inc.'s Counterclaim [Docket No. 19] is **DENIED**.

DATED: September 29, 2009  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge